IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| SHELA K. KESSLER,<br><br>     Plaintiff,<br><br>vs.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of the Social Security<br>Administration,<br><br>     Defendant. | CV 16-140-BLG-TJC<br><br><br>**ORDER** |

Plaintiff Sheila K. Kessler ("Plaintiff") has filed a complaint pursuant to 42

U.S.C. § 405(g) of the Social Security Act, requesting judicial review of the final

administrative decision of the Commissioner of Social Security ("Commissioner")

regarding the denial of her claim for disability insurance benefits ("DIB") under

Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-433.  (Doc. 2.)

The Commissioner has filed an Answer (Doc. 15) and the Administrative Record

("A.R.").  (Doc. 16).

Presently before the Court is Plaintiff's motion for summary judgment,

seeking reversal of the Commissioner's denial and remand for an award of

disability benefits.  (Doc. 24.)  The motion is fully briefed and ripe for the Court's review.  (Docs. 29, 32.)

For the reasons set forth herein, and after careful consideration of the record and the applicable law, the Court finds Plaintiff's motion should be **DENIED**, and the Commissioner's decision denying DIB should be **AFFIRMED**.

## I.     PROCEDURAL BACKGROUND

On April 16, 2013, Plaintiff filed an application for disability insurance benefits, which is the subject of this action.  (A.R. 185-188.)  Plaintiff alleged she has been unable to work since August 30, 2012.  (A.R. 185.)  The Social Security Administration denied Plaintiff's application initially on July 19, 2013, and upon reconsideration on November 29, 2013.  (A.R. 89-99; 100-111.)  On April 16, 2014, Plaintiff filed a written request for a hearing.  (A.R. 121-22.)  Administrative Law Judge Michele M. Kelley (the "ALJ") held a hearing on December 11, 2014.  (A.R. 40-88.)  On January 30, 2015, the ALJ issued a written decision finding Plaintiff not disabled.  (A.R. 20-35.)  Plaintiff requested review of the decision on March 11, 2015.  (A.R. 9.)  The ALJ's decision became final on June 21, 2016, when the Appeals Council denied Plaintiff's request for review.  (A.R. 1-5.)  Thereafter, Plaintiff filed the instant action.

Plaintiff argues the ALJ committed reversible error by (1) failing to give proper weight to her treating psychiatrist's opinion; (2) erroneously finding she did not meet Listings 12.04 (depressive disorders) and 12.06 (anxiety disorders); (3) improperly discrediting her testimony; and (4) failing to properly weigh lay witness testimony.

## II.    LEGAL STANDARDS

### A.    Scope of Review

The Social Security Act allows unsuccessful claimants to seek judicial review of the Commissioner's final agency decision.  42 U.S.C. §§ 405(g), 1383(c)(3).  The scope of judicial review is limited.  The Court must affirm the Commissioner's decision unless it "is not supported by substantial evidence or it is based upon legal error."  *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999).  *See also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) ("We may reverse the ALJ's decision to deny benefits only if it is based upon legal error or is not supported by substantial evidence."); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

"Substantial evidence is more than a mere scintilla but less than a preponderance."  *Tidwell*, 161 F.3d at 601 (citing *Jamerson v. Chater*, 112 F.3d

1064, 1066 (9th Cir. 1997)).  "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion."  *Flaten*, 44 F.3d at 1457.  In considering the record as a whole, the Court must weigh both the evidence that supports and detracts from the ALJ's conclusions.  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975)).  The Court must uphold the denial of benefits if the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision.  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten*, 44 F.3d at 1457 ("If the evidence can reasonably support either affirming or reversing the Secretary's conclusion, the court may not substitute its judgment for that of the Secretary.").  However, even if the Court finds that substantial evidence supports the ALJ's conclusions, the Court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching a conclusion.  *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978) (quoting *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968)).

/ / /

/ / /

## B.    Determination of Disability

To qualify for disability benefits under the Social Security Act, a claimant must show two things: (1) she suffers from a medically determinable physical or mental impairment that can be expected to last for a continuous period of twelve months or more, or would result in death; and (2) the impairment renders the claimant incapable of performing the work she previously performed, or any other substantial gainful employment which exists in the national economy.  42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A).  A claimant must meet both requirements to be classified as disabled.  *Id*.

The Commissioner makes the assessment of disability through a five-step sequential evaluation process.  If an applicant is found to be "disabled" or "not disabled" at any step, there is no need to proceed further.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005) (quoting *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000)).  The five steps are:

1.  Is claimant presently working in a substantially gainful activity?  If so, then the claimant is not disabled within the meaning of the Social Security Act.  If not, proceed to step two.  *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2.  Is the claimant's impairment severe?  If so, proceed to step three.  If not, then the claimant is not disabled.  *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1? If so, then the claimant is disabled. If not, proceed to step four. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled. If not, proceed to step five. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

5. Is the claimant able to do any other work? If so, then the claimant is not disabled. If not, then the claimant is disabled. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

Although the ALJ must assist the claimant in developing a record, the claimant bears the burden of proof during the first four steps, while the Commissioner bears the burden of proof at the fifth step. *Tackett*, 180 F.3d at 1098, n.3 (citing 20 C.F.R. § 404.1512(d)). At step five, the Commissioner must "show that the claimant can perform some other work that exists in 'significant numbers' in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id*. at 1100 (quoting 20 C.F.R. § 404.1560(b)(3)).

/ / /

/ / /

## III.  FACTUAL BACKGROUND

Plaintiff claims to suffer from severe impairments of degenerative disc disease of the spine, depression, anxiety disorder, and posttraumatic stress disorder ("PTSD").  She asserts that these impairments render her incapable of performing work she previously performed, or any other substantial gainful employment.

### A.  The Hearing

A hearing was held before the ALJ in Billings, Montana on December 11, 2014, and the following testimony was provided.

#### 1.  Plaintiff's Testimony

Plaintiff testified she had been living in California since the age of 18, and was able to maintain a consistent work history.  (A.R. 53-54.)  She moved back to Montana in 2006 to take over her family's direct sales "Shaklee" business.  (A.R. 52, 54.)  Plaintiff stated things changed for her when she moved to Montana because she had to live near her family again, and that caused her emotional difficulties.  (A.R. 54.)  She indicated her self-esteem and thought process deteriorated.  (*Id.*)

With respect to her work history since returning to Montana, Plaintiff testified that the family business has been in a steady decline.  (A.R. 56.)  She

estimated that she made approximately $500 per month in 2011-2012 from the business. (*Id.*) She said that in a typical week, she only spends 1-2 hours with the business. (A.R. 55.) Plaintiff retrieves voicemail messages, coordinates with customers to deliver orders, and drop ships products. (A.R. 56.) Most of her customers order online or over the phone, but approximately twenty percent come to her house to pick up products. (A.R. 55.) Plaintiff does not host parties to promote her Shaklee products, but she did host a party for her sister-in-law's similar business. (A.R. 70.)

Plaintiff testified she has also done temporary clerical jobs. (A.R. 52.) She testified she is generally able to complete those jobs because they are short term. (*Id.*) Plaintiff had one position with the Girl Scouts that had the potential to be permanent, but she was let go after the three month probationary period. (*Id.*) Plaintiff had another job she liked at Advance Employment, but she could not keep up with the pace, and had to quit. (A.R. 87.)

At the time of the hearing, Plaintiff testified she had been working a temporary job as a receptionist for seven weeks. (A.R. 49-50.) Plaintiff reported she had been absent four times during those seven weeks. (A.R. 50.) She said she missed work the day before the hearing and the day of the hearing. (A.R. 50-51.)

She also missed a portion of another day when she left early because of illness. (A.R. 50.)  Plaintiff could not remember the reason she missed the fourth day, other than "lack of wanting to go in."  (*Id.*)

Plaintiff testified she lives in a multi-level house with a roommate.  (A.R. 48-49; 58.)  She described her typical non-workday as waking up between 10:00 and 11:00 a.m., getting something to eat and taking it back to her bedroom and watching television.  (A.R. 58.)  Plaintiff described herself as a "very depressed person," and said sleep "is my best friend."  (*Id.*)  She indicated she isolates herself in her bedroom and does not use the middle level of her house because it is easier than talking to her roommate.  (*Id.*)  Plaintiff goes to bed around 6:00 p.m., watches television, and then takes her medications at 9:00 p.m.  (A.R. 61.)

Plaintiff stated she goes grocery shopping approximately once every two weeks.  (A.R. 58.)  She often misses meals because she does not have the energy to go shopping.  (*Id.*)  Plaintiff said she used to cook, but does not do so any longer. (A.R. 59.)  She usually eats frozen meals, and often goes to drive-through restaurants.  (A.R. 59-60.)

Plaintiff testified that she used to read, but her attention span has decreased, and now she can only look at magazines.  (A.R. 59.)  She also reported having

difficulties maintaining personal hygiene. (A.R. 61.) She said at times she would go three or four days without showering, and only brush her teeth every other day. (*Id.*) Nevertheless, Plaintiff also indicated she was able to take the necessary steps to obtain a loan modification on her home. (A.R. 60.) She also stated she had fallen behind on her taxes, but was able to do two years at once because she needed to get them done. (*Id.*)

Plaintiff said some days she is less functional than other days. (A.R. 62.) At times this is due to neglecting to take her medication for two or three days. (*Id.*) Plaintiff stated that there are also periods of time where she will miss a lot of appointments because she cannot get out of bed, and cannot leave her house. (A.R. 69.) Plaintiff testified she gets panic attacks and anxiety when she is closely involved with someone, such as a boyfriend. (A.R. 63.) She also gets "very panicky" around her parents. (*Id.*)

With regard to her physical limitations, Plaintiff testified that she takes OxyContin for pain. (A.R. 65.) She previously went to chemical dependency treatment due to her overuse of Hydrocodone. (*Id.*) Plaintiff stated she currently has a pain contract for her medication, and does not have any issues of overuse. (*Id.*) Plaintiff testified she cannot lift more than 35 to 40 pounds. (A.R. 66-67.)

Plaintiff also stated she didn't think she could do a job where she would have to stand for long period of time. (A.R. 67.) She also has a difficult time sitting at a desk all day long. (A.R. 68.)

### 2. Vocational Expert's Testimony

James Fortune, a vocational expert, also testified before the ALJ. (A.R. 76-85.) The ALJ asked Mr. Fortune three hypothetical questions. First, the ALJ asked Mr. Fortune to assume a person the same age as Plaintiff, and with the same work history and educational background, who could lift and carry 25 pounds frequently and 50 pounds occasionally, stand and walk 6 hours in an 8-hour work day, sit 6 hours in an 8-hour workday, frequently climb ramps and stairs, balance, kneel, crouch, and crawl, and occasionally climb ladders, ropes, and scaffolds, and stoop. (A.R. 79.) Mr. Fortune testified the hypothetical individual would be able to perform all of Plaintiff's past work. (*Id.*)

Second, the ALJ asked Mr. Fortune to assume the same person but with the limitation that the person could only make simple work decisions and judgments, tolerate only occasional changes in a work setting, and cannot work at a fixed production rate pace, but can do goal oriented work. (A.R. 79-80.) Mr. Fortune stated the person could perform Plaintiff's current job as a receptionist. (*Id*.) The

ALJ asked if there were any other jobs in the national economy the person could do.  (A.R. 80.)  Mr. Fortune stated the individual could work as a telephone survey worker, new account clerk, parking attendant, mail clerk, laundry dry cleaning worker, and kitchen helper.  (A.R. 80-82.)

Third, the ALJ asked Mr. Fortune to assume the same person, but with the requirement the person would be off task 20 percent of an 8-hour workday.  (A.R. 82.)  Mr. Fortune stated the individual could not perform Plaintiff's past jobs, or any other jobs in the national economy.  (*Id.*)

Plaintiff's counsel asked Mr. Fortune how many absences would generally be tolerated.  (A.R. 83.)  He stated two or more per month on a consistent basis would put the person's job in jeopardy.  (*Id.*)  Plaintiff's counsel then asked Mr. Fortune to assume the same person from hypothetical number one, but who was unable to maintain attention for 2 hour segments, sustain an ordinary routine without special supervision, or complete a normal work day without being interrupted by psychologically based symptoms.  (*Id.*)  Mr. Fortune stated there would be no jobs available.  (A.R. 83.)  He also testified that an employer would not tolerate a person who was unable to get along with coworkers or peers without unduly distracting them, or who exhibited behavioral extremes.  (*Id.*)

**B.    Medical Evidence**

The administrative record includes Plaintiff's medical records from several health care providers. The Court has summarized only those records that are relevant to the specific issues presented for review.[1]

1.    <u>Treating Provider Evidence</u>

a.    *Dr. James Whitworth, M.D.*

Plaintiff was treated by Dr. James Whitworth, a psychiatrist, for approximately four years. (A.R. 722.) In his initial assessment in November 2010, Dr. Whitworth noted Plaintiff had a long history of depression, which was successfully treated until she moved back to Billings. (A.R. 480.) After moving to Billings, Plaintiff reported a significant increase in PTSD symptoms, increasing psycho social problems, and ongoing problems with isolation. (*Id.*) Plaintiff also reported that she had extreme depression several times per week, her concentration was decreased, and she struggled with socializing and being in public. (A.R. 480-81.) Dr. Whitworth diagnosed Plaintiff with PTSD, Depressive Disorder NOS, and

---

[1] Plaintiff does not argue the ALJ erred with regard to her consideration of Plaintiff's physical impairments. Therefore, the Court finds it is not necessary to address the medical evidence related to Plaintiff's physical conditions.

Obsessive-Compulsive Disorder. (A.R. 482.) He indicated she would probably not make much progress living in close proximity to her parents and brother. (*Id.*)

Thereafter, Plaintiff saw Dr. Whitworth approximately every one to two months. (A.R. 467-479; 623-624; 649-658.) Dr. Whitworth noted that Plaintiff was often depressed, anxious, having financial issues, and was under stress. (*Id.*) Dr. Whitworth adjusted Plaintiff's medications on numerous occasions. (A.R. 467-69, 471, 473-75; 477; 479; 623; 649-51; 654-55; 657.) Dr. Whitworth also indicated, however, that Plaintiff had periods where she reported doing better. (A.R. 472; 476; 649; 652-53.)

On December 1, 2014, Dr. Whitworth completed a Mental Impairment Questionnaire. (A.R. 722-26.) Dr. Whitworth indicated Plaintiff's symptoms include dysphoria, hopelessness, tearfulness, poor sleep, mood lability, irritability, anxiety, intrusive memories, isolation, and difficulty with consistent behavior. (A.R. 722.) Dr. Whitworth noted Plaintiff is optimistic about her recovery, but had not made much progress. (*Id.*)

Dr. Whitworth opined Plaintiff is unable to sustain an ordinary routine without special supervision, and cannot perform at a consistent pace without an unreasonable number and length of rest periods. (A.R. 723.) He indicated

14

Plaintiff's psychological symptoms seriously limit her ability to maintain regular attendance, complete a normal workday or workweek without interruptions, get along with co-workers, respond appropriately to changes in a routine work setting, and deal with normal work stress. (*Id.*) Dr. Whitworth noted Plaintiff had moderate limitations in remembering procedures and short and simple instructions, working in coordination with others without being unduly distracted, making simple work-related decisions, asking simple questions and accepting instructions and responding appropriately to criticism. (*Id.*) He stated Plaintiff is able to carry out short and simple instructions. (*Id.*)

In terms of functional limitations, Dr. Whitworth indicated Plaintiff has mild restrictions in activities of daily living, and moderate restrictions in maintaining social functioning and concentration, persistence or pace. (A.R. 725.) He also stated Plaintiff has had three or more episodes of decompensation of an extended duration. (*Id.*) Dr. Whitworth described the episodes as Plaintiff becoming non-functional and needing support, and he stated this occurred in February 2014, June 2014, and September 2014. (*Id.*) Dr. Whitworth anticipated Plaintiff would miss one to two days of work per month. (A.R. 726.) Dr. Whitworth further opined that Plaintiff is able to have temporary success, but her mood liability, social skills, and

anxiety issues disrupt her ability to function. (A.R. 724.) He stated that Plaintiff is able to obtain employment, but she "falls apart" and is easily overwhelmed when things get stressful. (A.R. 723, 725.)

        b.    *Marion Grummett, MS, LCPC*

Plaintiff was treated by Licensed Clinical Professional Counselor Marion Grummett on a bi-weekly basis for approximately five years. The record contains extensive treatment notes spanning from April 1, 2010 through October 22, 2014. (A.R. 387-466; 612-622; 685-720.) Ms. Grummett noted that Plaintiff cancelled or failed to show for her appointments roughly half of the time. (*See Id.* (progress notes indicate Plaintiff failed to show or cancelled her appointments approximately 49 times out of 115 scheduled sessions).) In her counseling sessions, Plaintiff typically discussed issues she was facing with obtaining work, financial difficulties, her relationship with her family, and her moods, anxieties, stresses, sleeping problems, isolation, and depression. (*Id.*)

        c.    *Rimrock Foundation Treatment*

On January 11, 2012, Plaintiff was admitted to Rimrock Foundation for treatment of opiate addiction. (A.R. 311-22.) Plaintiff reported that she had become addicted to opiates after being prescribed LorTab for back pain in 2008.

(A.R. 311.)  Plaintiff sought treatment after she was dismissed from the St. Vincent

Pain Management Center for overusing her medication.  (*Id.*)  Near the time

Plaintiff entered treatment, she reported to an addiction counselor that she had lost

all of her jobs due to her opiate dependence.  (A.R. 487.)

The discharge summary from Rimrock Foundation stated Plaintiff had

vegetative symptoms of depressive disorder, impaired concentration, and sleep

disturbance.  (A.R. 318.)  It was also noted that Plaintiff had PTSD and

experienced cognitive deficits, impaired concentration, and depression as a result.

(A.R. 320.)  Plaintiff's medications were adjusted while she was in treatment, and

it was noted that her anxiety and depression were decreased at the time of

discharge.  (A.R. 314-15.)

> d. *Billings Clinic Hospital Admission*

On August 22, 2014, Plaintiff presented to the Billings Clinic Emergency

Department due to suicidal thoughts.  (A.R. 661-66.)  Plaintiff was seen by

licensed clinical social worker Michael Ulrich for a psychiatric acute care

evaluation, and was voluntarily admitted.  (A.R. 667-71.)  Plaintiff reported having

significant issues with depression and anxiety, and stated that she was struggling to

shake the urge to do something to hurt herself.  (A.R. 667.)  Plaintiff admitted she

thought of overdosing on her medication. (A.R. 670.) Plaintiff's medication was adjusted, and she reported some stabilization in mood. (A.R. 679.) On August 25, 2014, Plaintiff was released from the hospital with a referral for opiate addiction treatment. (A.R. 672-76.)

2. Non-Examining Physician Evidence

a. *Marsha McFarland, Ph.D.*

Dr. Marsha McFarland reviewed Plaintiff's medical records, but did not examine her, and did not testify at the hearing. She issued an opinion on July 3, 2013. (A.R. 93-95.) Dr. McFarland opined that Plaintiff had mild restriction of activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation of an extended duration. (A.R. 94.) Dr. McFarland noted that Plaintiff had a history of therapy and medication management for PTSD, depression, and anxiety. (A.R. 93-94.) Dr. McFarland opined Plaintiff's conditions were exacerbated by significant situational components, including her chronic pain condition, difficulties with family relationships, financial stressors, and substance abuse history. (*Id.*) Nevertheless, Dr. McFarland opined Plaintiff's functional domains were not severely reduced. (*Id.*)

b. *Robert Bateen, Ph.D.*

Dr. Robert Bateen also reviewed Plaintiff's medical records upon reconsideration of the initial denial of Plaintiff's claim, and he issued an opinion on November 27, 2013. (A.R. 105-08.) Dr. Bateen agreed with Dr. McFarland's assessment of Plaintiff's mental limitations. (A.R. 108.) Dr. Bateen opined that Plaintiff's condition is non-severe, and further development was not warranted. (*Id.*)

## C. The ALJ's Findings

The ALJ followed the five-step sequential evaluation process in considering Plaintiff's claim. First, the ALJ found Plaintiff had not engaged in substantial gainful activity since August 30, 2012. (A.R. 22.) Second, the ALJ found Plaintiff has the following severe impairments: "degenerative disc disease of the spine; depression; anxiety; and polysubstance abuse." (A.R. 23.) Third, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals any one of the impairments in the Listing of Impairments. (A.R. 23-26.) Fourth, the ALJ stated Plaintiff has the RFC to:

> perform less than the full range of medium work as defined in 20 CFR 404.1567(c). The claimant can lift, carry, push and pull 25 pounds frequently, and 50 pounds occasionally. She can walk and stand for 6 hours in an 8-hour workday, and sit for 6 hours in an 8-hour workday.

> She can frequently climb ramps and stairs, balance, kneel, crouch and crawl; but only occasionally climb ladders, ropes and scaffolds, and stoop. The claimant can make only simple work decisions and judgments; and can tolerate only occasional changes in a routine work setting. She cannot perform work at a fixed production rate pace, but can do goal-oriented work.

(A.R. 26.)

The ALJ next found that Plaintiff is able to perform her past relevant work as a receptionist. (A.R. 33.) The ALJ alternatively found Plaintiff could perform the requirements of representative occupations such as new account clerk, parking attendant, mail clerk, laundry and dry cleaning worker, and kitchen helper. (A.R. 35.) Thus, the ALJ found that Plaintiff was not disabled. (*Id.*)

## IV. DISCUSSION

Plaintiff argues the ALJ erred in the following ways: (1) not giving proper weight to Dr. Whitworth's opinion; (2) failing to find Plaintiff met Listings 12.04 (depression disorders) and 12.06 (anxiety disorders); (3) improperly discrediting Plaintiff's testimony; and (4) failing to give proper weight to the lay testimony of Plaintiff's friend Cindy Shawhan.

/ / /

/ / /

/ / /

## A.     The ALJ's Evaluation of the Treating Physician's Opinion

Plaintiff contends that the ALJ improperly discounted Dr. Whitworth's opinion without clear and convincing reasons.  In response, the Commissioner argues the ALJ gave sufficient reasons for discounting Dr. Whitworth's opinion.

### 1.     Legal Standard

In assessing a disability claim, an ALJ may rely on "opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995.)  The Commissioner applies a hierarchy of deference to these three types of opinions.  The opinion of a treating doctor is generally entitled to the greatest weight.  *Id.*  ("As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant."); *see also* 20 C.F.R. § 404.1527(c)(2).  "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician."  *Lester*, 81 F.3d at 830.

"The opinion of a treating physician is given deference because 'he is employed to cure and has a greater opportunity to know and observe the patient as

an individual.'" *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600

(9th Cir. 1999) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987)).

"However, the opinion of the treating physician is not necessarily conclusive as to

either the physical condition or the ultimate issue of disability." *Id. See also*

*Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) ("Although a treating

physician's opinion is generally afforded the greatest weight in disability cases, it

is not binding on an ALJ with respect to the existence of an impairment or the

ultimate determination of disability.").

If the treating physician's opinion is not well-supported by medically

acceptable clinical and laboratory diagnostic techniques, or is inconsistent with

other substantial evidence in the record, it is not entitled to controlling weight.

*Orn v. Astrue*, 495 F.3d 625, 631-32 (9th Cir. 2007) (quoting Social Security

Ruling 96-2p). In that event, the ALJ must consider the factors listed in 20 C.F.R.

§ 404.1527(c) to determine what weight to accord the opinion. *See* Social Security

Ruling 96-2p (stating that a finding that a treating physician's opinion is not well

supported or inconsistent with other substantial evidence in the record "means only

that the opinion is not entitled to 'controlling weight,' not that the opinion should

be rejected. Treating source medical opinions are still entitled to deference and

must be weighed using all of the factors provided in 20 C.F.R. § 404.1527.").  The

factors include: (1) the length of the treatment relationship and the frequency of

examination; (2) the nature and extent of the treatment relationship; (3)

supportability of the opinion; (4) consistency of the opinion with the record as a

whole; (5) the specialization of the treating source; and (6) any other factors

brought to the ALJ's attention that tend to support or contradict the opinion.  20

C.F.R. § 404.1527(c)(2)(I)-(ii), (c)(3)-(6).

Opinions of treating physicians may only be rejected under certain

circumstances.  *Lester,* 81 F.3d at 830.  To discount an uncontradicted opinion of a

treating physician, the ALJ must provide "clear and convincing reasons."  *Id.*  To

discount the controverted opinion of a treating physician, the ALJ must provide

"'specific and legitimate reasons' supported by substantial evidence in the record."

*Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012)*; Reddick v. Chater*, 157

F.3d 715, 725 (9th Cir. 1998).  The ALJ can accomplish this by setting forth "a

detailed and thorough summary of the facts and conflicting clinical evidence,

stating his interpretation thereof, and making findings."  *Magallanes v. Bowen*, 881

F.2d 747, 751 (9th Cir. 1989).  "The ALJ must do more than offer his conclusions.

He must set forth his own interpretations and explain why they, rather than the

doctors' are correct." *Reddick*, 157 F.3d at 725. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician." *Lester*, 81 F.3d at 831. However, "the findings of a nontreating, nonexamining physician can amount to substantial evidence, so long as other evidence in the record supports those findings." *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996).

### 2. Dr. Whitworth

Dr. Whitworth's opinions are contradicted by the opinions of two nonexamining psychologists. Therefore, the ALJ must provide specific and legitimate reasons to discount his opinions.

In her decision, the ALJ gave Dr. Whitworth's opinion "little weight." (A.R. 32.) The ALJ noted that Dr. Whitworth had treated Plaintiff for four years. (A.R. 21-32.) Nevertheless, the ALJ determined his opinion was not entitled to controlling weight because it was inconsistent with the evidence of record, Plaintiff's generally conservative treatment history, and Plaintiff's activities of daily living. (A.R. 32.) The ALJ further found there was no evidence to support Dr. Whitworth's opinion that Plaintiff had any episodes of decompensation lasting two weeks. (*Id.*)

Being mindful that the Court cannot substitute its judgment for that of the ALJ, the Court finds the ALJ provided specific and legitimate reasons supported by substantial evidence for not affording Dr. Whitworth's opinion controlling weight. The ALJ found Dr. Whitworth's opinion that Plaintiff could not maintain regular attendance or perform at a consistent pace to be inconsistent with Plaintiff's ability to work on a full time basis for over seven weeks, and her ability to complete other temporary assignments. This conclusion is supported by the evidence in the record. (A.R. 49-52.)

In addition, the ALJ found Dr. Whitworth's opinions were inconsistent with Plaintiff's activities of daily living, which included consistently seeking temporary work, continuing to work in her family business, and receiving unemployment benefits which required her to hold herself out as ready, willing, and able to work. (A.R. 30.) Again, these observations are supported in the record (A.R. 55-56; 197-98; 393; 440; 443; 473; 612; 654), and are a proper basis for rejecting Dr. Whitworth's opinion. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (stating an ALJ may reject a doctor's opinion that is inconsistent with a claimant's daily activities).

The ALJ also noted that Plaintiff was generally treated with ongoing medication management and psychotherapy, which the ALJ considered to be conservative treatment. (A.R. 30.)

Further, the ALJ correctly pointed out that Dr. Whitworth did not describe or provide any details about the alleged episodes of decompensation, other than to list the months the episodes occurred. (A.R. 32.) The ALJ also found that there was no evidence of any episodes of decompensation of an extended duration. Plaintiff disputes this finding, but the record supports the ALJ's conclusion. Plaintiff was hospitalized for four days in August 2014 for suicidal ideation. (A.R. 661-80.) But this hospitalization falls short of the two-week requirement to be considered an episode of decompensation of extended duration. *See* 20 C.R.F. Pt. 404, Subpt. P, Appx. 1 § 12.00(C)(4) (effective Dec. 9, 2014) (at the time of Plaintiff's hearing, the Listings provided "The term repeated episodes of decompensation, each of extended duration in these listings means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.")

The treatment notes that correspond to the other two episodes of decompensation identified by Dr. Whitworth can be reasonably interpreted as not evidencing decompensation. For example, in February 2014, Dr. Whitworth noted

that Plaintiff was depressed, tearful, and very distressed over her lack of progress

with her financial situation.  (A.R. 654.)  But he also noted that she was

experiencing situational stressors due to her parents moving into assisted living.

(*Id.*)  He assessed a GAF score of 48, which was unchanged from the prior months,

indicating Plaintiff's functioning had not changed.  (A.R. 652-55.)  During the

same timeframe, Plaintiff also reported to her counselor that she was able to run

errands, and was helping her parents prepare to move.  (A.R. 696-97.)

In June 2014, Dr. Whitworth noted Plaintiff reported "isolating really bad,"

and that she appeared tearful and depressed.  (A.R. 657.)  Yet, he also noted that

she was able to go to Yellowstone with a friend and had some house repairs

completed.  (*Id.*)

"Where evidence is susceptible to more than one rational interpretation, it is

the ALJ's conclusion that must be upheld."  *Burch*, 400 F.3d at 679.  Accordingly,

the Court finds the ALJ did not err in considering Dr. Whitworth's opinion.[2]

/ / /

---

[2] In evaluating the weight to accord to Dr. Whitworth's opinion, the ALJ did not
specifically reference 20 C.F.R. § 404.1527, or the factors to be considered therein.
Nevertheless, a reference to each of the factors can be found at different parts of
the ALJ's discussion of Dr. Whitworth's opinions.

**B.     The ALJ's Determination that Plaintiff's Impairments Did Not Meet Listings 12.04, and 12.06**

Plaintiff argues the ALJ erred at step three by finding she did not meet the criteria for presumptive disability under Listings 12.04 for depressive disorders, and 12.06 for anxiety disorders.  20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00 (2014).  Plaintiff further asserts the ALJ failed to obtain a medical expert to testify at the hearing, and failed to properly assess Plaintiff's PTSD.  The Commissioner contends substantial evidence supports the ALJ's determination that Plaintiff did not meet a Listing.

### 1.     The ALJ's Step Three Analysis

In order for Plaintiff to meet Listings 12.04, or 12.06 in effect at the time of her hearing, she was required to establish a disorder that satisfies the requirements of paragraphs A and B, or paragraph C of the Listings.  20 C.R.F. Pt. 404, Subpt. P, Appx. 1 § 12.04; 12.06 (effective Dec. 9, 2014).  Paragraph A established a list of medical findings, and required that at least one be present.  *Id.*  Paragraph A is not in dispute here.  Paragraphs B and C provided certain impairment-related functional limitations that must be satisfied to meeting the listing.  *Id.*  Plaintiff claims that she met the listing under paragraph B.  Paragraph B required that a claimant's mental impairment result in at least two of the following: (1) marked

restrictions of activities of daily living; (2) marked restrictions in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence or pace; and (4) repeated episodes of decompensation, each of extended duration. *Id.*; § 12.00(C)(1)-(4).

Here, the ALJ found Plaintiff had only mild restrictions in activities of daily living, mild restrictions in social functioning, moderate difficulties in maintaining concentration, persistence, and pace, and no episodes of decompensation extended duration. (A.R. 24-25.)

In reaching this conclusion with respect to activities of daily living, the ALJ cited evidence that Plaintiff can prepare her own simple meals, care for her pets, do some household chores, drive, and shop in stores. (A.R. 24.) She was also able to provide significant help to her family, including helping her parents move twice and helping care for her father after his leg amputation. (*Id.*)

With respect to social functioning, the ALJ noted that although Plaintiff tends to isolate herself, she is capable of doing things outside her home. (*Id.*) The ALJ cited evidence that Plaintiff occasionally meets friends for lunch and dinner, she spends "a lot" of time with her friend, Cindy Shawhan, she uses Facebook, she traveled with a friend through Yellowstone Park, traveled with family to California

and Florida, took her father to appointments and to run errands, held a number of temporary positions, and interacts with customers through her family business. (A.R. 24-25.)

As to concentration, persistence, and pace, the ALJ found that although Plaintiff had difficulties with memory and concentration, she has engaged in numerous activities that show the ability to function with regard to concentration, persistence and pace. (A.R. 25.) The ALJ stated Plaintiff performed the necessary steps to refinance her mortgage and have her house repaired after hailstorms. (*Id.*) Plaintiff admitted that most of the time she finishes what she starts, she can follow most written instructions, and can handle changes in routine if she has advance notice. (*Id.*) The ALJ also pointed out that Plaintiff was capable of working in her family business and completing her temporary work assignments. (*Id.*)

Finally, the ALJ determined that Plaintiff had experienced "no episodes of decompensation which have been of extended duration." (A.R. 29.) As discussed above, this finding is supported by substantial evidence in the record.

Plaintiff argues the record supports a finding of more severe impairment in each functional area, and cites to evidence which she believes shows multiple episodes of decompensation. To be sure, the evidence in this case could be

interpreted more favorably to Plaintiff.  Nevertheless, the Court finds the ALJ

conducted a thorough analysis at step three.  In discussing each of the paragraph B

criteria, the ALJ cited specific evidence from the record to support her conclusions.

(A.R. 24-25.)  The ALJ's observations are consistent with the evidence in the

record, and are not improperly "cherry picked," as Plaintiff argues.[3]  On the

contrary, the ALJ acknowledged and considered Plaintiff's limitations, which

suggests she considered the entire record.  (A.R. 24-25; 29-30.)  When there is

more than one reasonable interpretation of the evidence, the Court may not

substitute its judgment for the ALJ's.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th

Cir. 2002).

Accordingly, the Court finds the ALJ's finding that Plaintiff did not meet

Listings 12.04 and 12.06 is supported by substantial evidence.

/ / /

/ / /

/ / /

---

[3] To the extent the ALJ's determination was inconsistent with the treating
physician's opinion, Plaintiff's testimony, and the lay witness opinion, the Court
has found the ALJ's assessment of the opinion evidence and Plaintiff's credibility
was supported by substantial evidence, as discussed in this order.

2.    Medical Expert

Plaintiff next argues the ALJ should have called a medical expert to give an opinion on whether Plaintiff's impairments met or equaled a Listing as directed by the HALLEX I-2-5-34. The Court finds the ALJ did not err in this regard.

An ALJ has discretion whether to consult a medical expert. 20 C.F.R. § 404.1527(e)(2)(iii). The Commissioner's operations manual provides that the need for medical expert opinion evidence is "generally left to the ALJ's discretion," except in three circumstances, including when the ALJ "is considering finding that the claimant's impairment(s) medically equals a listing." Hearings, Appeals and Litigation Law Manual (HALLEX) I-2-5-32(A); I-2-5-34(A)(1).[4]

This provision does not require an ALJ to obtain a medical expert when she is merely determining whether the claimant's impairments meet a listing. HALLEX I-2-5-34(A)(2) (providing that obtaining a medical expert opinion is "discretionary" when the ALJ is determining "whether a claimant's impairment(s) meets a listed impairment(s)"). If the rule were otherwise, the ALJ would

_____

[4] The other circumstances, which are not relevant here, are when "the Appeals Council or Federal court ordered an ME opinion" and when "there is a question about the accuracy of medical test results reported, requiring evaluation of background medical test data." HALLEX I-2-5-34(A)(1).

essentially have no discretion and would be required to obtain a medical expert opinion in every case.  But that is not required by the plain language of HALLEX I-2-5-34.  *See Rudy v. Colvin*, 2014 WL 5782930, at *14 (S.D. Ohio Nov. 6, 2014), report and recommendation adopted, 2015 WL 1000672 (S.D. Ohio Mar. 5, 2015) ("An administrative law judge must consider whether a claimant meets or equals a medical listing in every case.  If plaintiff is correct, rather than having discretion as to whether [to] obtain testimony from a medical expert, an administrative law judge would be required to have a medical expert in each and every case. The plain language of the provision relied upon by plaintiff [HALLEX I-2-5-34(B)] more likely requires the opinion of a medical expert in any case in which the administrative law judge makes a finding that a claimant's impairment equals a listing.").

Here, the ALJ specifically addressed Plaintiff's request to have a medical expert testify.  (A.R. 20.)  The ALJ found the voluminous medical record was sufficient to make a decision on Plaintiff's claim for benefits.  The ALJ did not consider finding Plaintiff's impairments medically met a Listing.  Thus, the Court finds the ALJ reasonably relied on the medical opinions and evidence in the record, and did not abuse her discretion by not calling a medical expert.

3. Consideration of PTSD

Plaintiff further argues the ALJ did not make a finding as to the severity of her PTSD. The Commissioner concedes that the ALJ failed to discuss the severity of Plaintiff's PTSD at step two, but argues the error was harmless because the ALJ found Plaintiff had other severe impairments, and continued her analysis beyond step two.

Under step two of the sequential evaluation process, the ALJ must determine whether claimant suffers from a severe impairment or combination of impairments. 20 C.F.R 404.1520(c); 416.920. At the step two inquiry, "the ALJ must consider the combined effect of all of the claimant's impairments on her ability to function, without regard to whether each alone was sufficiently severe." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)). The Social Security Act defines a "severe" impairment as one "which significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). "An impairment or combination of impairments may be found 'not severe *only* if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir.

2005) (quoting *Smolen*, 80 F.3d at 1290).  The step two "inquiry is a de minimis

screening device [used] to dispose of groundless claims," *Smolen*, 80 F.3d at 1290.

Here, the medical records show that Plaintiff was diagnosed with and treated

for PTSD.  (A.R. 467-83; 623-24; 649-58.)  Nevertheless, the ALJ did not address

Plaintiff's PTSD at step two.  The ALJ only found Plaintiff suffered from the

severe impairments of degenerative disc disease of the spine, depression, anxiety

and polysubstance abuse.  (A.R. 23.)  The Court finds the ALJ's failure to

acknowledge PTSD was erroneous.  However, the error was harmless.  *Carmickle*

*v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (stating an ALJ's

error is harmless if it is "inconsequential to the ultimate nondisability

determination.").

The ALJ must consider all of the claimant's impairments in assessing the

RFC, including non-severe impairments.  *Carmickle v. Comm'r, Soc. Sec. Admin.*,

533 F.3d 1155, 1164 (9th Cir. 2008) ("The ALJ is required to consider all of the

limitations imposed by the claimant's impairments, even those that are not severe.

Even though a non-severe "impairment[ ] standing alone may not significantly

limit an individual's ability to do basic work activities, it may—when considered

with limitations or restrictions due to other impairments—be critical to the outcome of a claim.") (citing Social Security Ruling 96–8p)).

Although the ALJ failed to discuss Plaintiff's PTSD at step two, the ALJ subsequently acknowledged her PTSD diagnosis several times in the decision. (*See* A.R. 27, 29, 30 & 31.)  Further, there is no indication in the record that the Plaintiff's PTSD caused any unique symptoms that would not be included in the constellation of symptoms which have been attributed to all of her mental health impairments.  The ALJ considered and discussed all of those symptoms in her decision.

In addition, the ALJ's RFC determination contains restrictions that would account for the limitations noted by Dr. Whitworth with regard to Plaintiff's impairments, including her PTSD.  For example, the RFC restricted Plaintiff to simple work decisions and judgments to account for her problems with memory and concentration.  (A.R. 26, 31.)  She was limited to goal-oriented work that does not require fixed production rates to accommodate her poor energy and concerns about being overwhelmed.  (*Id.*)  The RFC also limited Plaintiff to only occasional changes in routine work setting to account for her difficulties in handling stress and

adjusting to new routines.  (*Id.*)  Thus, the ALJ considered the effects of Plaintiff's

PTSD in assessing the RFC.

Accordingly, the Court finds the ALJ's error with regard to Plaintiff's PTSD

does not require reversal.

### C.    The ALJ's Credibility Determination

Plaintiff argues the ALJ's credibility determination was erroneous because

the ALJ made only a general credibility finding without providing clear and

convincing reasons for rejecting her testimony.  The Commissioner counters that

the ALJ properly evaluated Plaintiff's credibility.

The credibility of a claimant's testimony is analyzed in two steps.  *Vasquez

v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  First, the ALJ must determine

whether the claimant has presented objective evidence of an impairment or

impairments that could reasonably be expected to produce the pain or other

symptoms alleged.  *Id.*  Second, if the claimant meets the first step, and there is no

affirmative evidence of malingering, the ALJ may reject the claimant's testimony

only if she provides "specific, clear and convincing reasons" for doing so.  *Id.*  "In

order for the ALJ to find [the claimant's] testimony unreliable, the ALJ must make

'a credibility determination with findings sufficiently specific to permit the court to

conclude that the ALJ did not arbitrarily discredit claimant's testimony.'" *Turner v. Commissioner of Soc. Sec. Admin.*, 613 F.3d 1217, 1224 n.3 (9th Cir. 2010). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Reddick v. Chater*, 157 F.3d 714, 722 (9th Cir. 1998) (quoting *Lester*, 81 F.3d at 834). *See also Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015). The clear and convincing standard "is not an easy requirement to meet: '[It] is the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014).

To assess a claimant's credibility, the ALJ may consider (1) ordinary credibility techniques, (2) unexplained or inadequately explained failure to seek or follow treatment or to follow a prescribed course of treatment, and (3) the claimant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *Fair v. Bowen*, 885 F.2d 597, 603-04 (9th Cir. 1989). An ALJ may also take the lack of objective medical evidence into consideration when assessing credibility. *Baston v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004). However, the ALJ may not reject the claimant's statements about the intensity and persistence of their pain or other symptoms "solely because the available objective

medical evidence does not substantiate [the claimant's] statements." 20 C.F.R. § 404.1529(c)(2).

Here, the first step of the credibility analysis is not at issue. The ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause her symptoms, and there is no argument that Plaintiff is malingering. Therefore, the ALJ was required to cite specific, clear and convincing reasons for rejecting Plaintiff's subjective testimony about the severity of her symptoms. The Court finds the ALJ did so.

The ALJ found Plaintiff's testimony regarding the degree of her limitations was only partially credible based on the objective medical evidence, her longitudinal treatment history, and her activities of daily living. (A.R. 29-30.) In reaching these conclusions, the ALJ properly identified specific aspects of Plaintiff's testimony she found not credible, and cited specific evidence she believed contradicted that testimony. (A.R. 27, 29-30.) *Reddick*, 157 F.3d at 722; *Brown-Hunter*, 806 F.3d at 489.

For example, the ALJ noted Plaintiff reported experiencing panic attacks, suicidal thoughts, difficulty getting out of bed, isolating herself, and concentration and memory problems. (A.R. 27.) The ALJ found, however, that there was

evidence that undermined Plaintiff's claims with regard to her symptoms. The ALJ pointed out that while her mental status examinations showed limitations, they also included a number of benign findings. (A.R. 29.) For example, Plaintiff was variously described in the records as exhibiting a normal mood and affect, having a pleasant mood, being cooperative with normal eye contact, being casually dressed and appropriately groomed, exhibiting organized thought processes, and possessing insight and judgment which were fair, normal or good. (Ar.R. 29-30.)

As discussed above, the ALJ also noted Plaintiff was capable of travelling, completing temporary work assignments, assisting her parents, and working in her family business and interacting with clients. (A.R. 29-30.)

The ALJ's observations are generally supported in the record. Accordingly, the Court finds the ALJ properly considered Plaintiff's testimony, and provided sufficiently specific, clear and convincing reasons for her conclusion with respect to Plaintiff's credibility.

### D.     The ALJ's Consideration of Lay Witness Testimony

Plaintiff next argues the ALJ failed to cite specific and germane reasons to discount the testimony of her friend Cindy Shawhan. The Commissioner argues

the ALJ properly considered Ms. Shawhan's testimony, and reasonably gave it partial weight.

"Lay testimony as to a claimant's symptoms is competent evidence which the [ALJ] must take into account, unless he expressly determines to disregard such testimony, in which case 'he must give reasons that are germane to each witness.'" *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (quoting *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)). Competent lay witness testimony "*cannot* be disregarded without comment." *Id.* (emphasis in original). The ALJ is not, however, required to discuss every witness's testimony on an individualized, witness-by-witness basis. *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012). "[I]f the ALJ gives germane reasons for rejecting the testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Id.*

Ms. Shawhan submitted a Third Party Function Report dated July 13, 2013, explaining that she has known Plaintiff for 38 years and spends a significant amount of time with her. (A.R. 245-53.) Ms. Shawhan stated Plaintiff sleeps a lot, needs encouragement to do things, has mentally declined, is easily distracted, does not handle stress well, and is depressed, in pain, sad and withdrawn. (*Id.*) On the

41

other hand, she indicated Plaintiff is able to take care of her pets, prepare her own meals, does not need special reminders to take care of personal needs or take medication, and can do some laundry and household chores. (*Id.*) Ms. Shawhan reported Plaintiff can also drive, go shopping in stores and online, watch television, read magazines, use Facebook, and socialize with others over meals or coffee on a weekly basis, and that she does not have problems getting along with people or authority figures. (*Id.*)

The ALJ credited Ms. Shawhan's statements about Plaintiff's abilities and her understanding, concentration, and memory problems because they were generally consistent with the record. But the ALJ discounted her statements to the extent she opined Plaintiff was incapable of working. (A.R. 33.) As the ALJ noted, Ms. Shawhan's statements were similar to Plaintiff's testimony. The Court has already concluded that the ALJ provided specific, clear, and convincing reasons for rejecting Plaintiff's testimony. As such, the Court finds the ALJ's findings with respect to Plaintiff's testimony provides a sufficient basis for the ALJ's rejection of Ms. Shawhan's similar testimony. *See e.g Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (stating an ALJ may rely on

the same reasons he gave for discounting the claimant's credibility when the lay witness has given similar testimony).

Accordingly, the Court finds the ALJ gave sufficiently germane reasons for assigning partial weight to Ms. Shawhan's lay witness opinion.

## V.     CONCLUSION

Based on the foregoing,  **IT IS ORDERED** that the Commissioner's decision denying DIB is **AFFIRMED**, and that Plaintiff's motion for summary judgment (Doc. 24) is **DENIED**.

**IT IS ORDERED**.

DATED this 16th day of May, 2018.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge